## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SHANNON WICKER,
    *Plaintiff*,

    v.

CAPTAIN PAPOOSHA, et al.,
    *Defendants*.

No. 3:24-cv-1640 (VAB)

## INITIAL REVIEW ORDER

Shannon Wicker ("Plaintiff"), an unsentenced inmate in the custody of Connecticut Department of Correction ("DOC"), filed this civil rights action *pro se* under 42 U.S.C. § 1983.[1] Mr. Wicker asserts claims under the United States Constitution arising from his treatment while a pretrial detainee at New Haven Correctional Center ("NHCC") and Corrigan-Radgowski Correctional Center ("CRCC"). He seeks both individual and official capacity relief against six DOC employees: Security Risk Coordinator Captain Papoosha, District Administrator Craig Washington, Correction Officer Zack, Lieutenant Dawson, Warden Dougherty, and Warden Brunelle. Doc. No. 1 at 2.

Based on an initial review, the Court orders as follows:

Mr. Wicker may proceed on the following claims: (1) a Fourteenth Amendment procedural due process claim against Lieutenant Dawson, District Administrator Washington, and Captain Papoosha; (2) a substantive due process claim arising from the alleged punitive placement and

---

[1] The State of Connecticut Department of Correction website reflects Mr. Wicker's latest admission date as June 20, 2024, and that he has not been convicted or sentenced. *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=303518 (last visited on March 7, 2025).

conditions in the SRG Unit against Captain Papoosha; and (3) Fourteenth Amendment Due Process and Equal Protection Clauses claims against Captain Papoosha and District Administrator Washington in their official capacities.

All claims against Correction Officer Zack or Wardens Dougherty and Brunelle are **DISMISSED**.

The Fourteenth Amendment equal protection claim against Captain Papoosha in his individual capacity is **DISMISSED**.

If Mr. Wicker can allege facts to cure the deficiencies identified in this Ruling and Order, he may file a motion to amend and attach an Amended Complaint by **April 18, 2025**. An Amended Complaint, if filed, will completely replace the Complaint, and the Court will not consider any allegations made in the original Complaint in evaluating any Amended Complaint.

## I.    FACTUAL BACKGROUND[2]

Mr. Wicker allegedly has a history of designation as a Security Risk Group ("SRG") inmate at DOC. In 2016, Mr. Wicker allegedly pled guilty to SRG affiliation and was transported to Northern Correctional Institution for Phase 1 of the SRG Program. Doc. No.1 at 7 (¶ 18). In June 2017, Mr. Wicker allegedly was discharged from CRCC after completing several phases of the SRG program. *Id.* Mr. Wicker allegedly did not, however, complete the SRG Program due to his discharge date. *Id.*

In 2018, Mr. Wicker allegedly was readmitted to DOC and returned to the SRG Program. *Id.* During several months, Mr. Wicker allegedly completed each phase of the SRG Program without receiving any disciplinary tickets. *Id.* Two weeks after his alleged completion of the SRG

---

[2] The Court does not include herein all of the allegations from the complaint but summarizes only those facts necessary to provide context for initial review.

Program on December 1, 2018, Mr. Wicker allegedly was subjected to a hostile situation and was forced to protect himself from an assault by an active gang member. *Id.* As a result, Mr. Wicker allegedly was sent to the Restrictive Housing Unit ("RHU") and a week later allegedly was returned to recommence the SRG Program. *Id.* On February 1, 2019, Mr. Wicker allegedly was discharged from CRCC three weeks before he could complete the SRG Program. *Id.*

On June 20, 2024, Mr. Wicker allegedly was again admitted to the custody of DOC as a pretrial detainee at NHCC. *Id.* at 2 (¶ 6). Mr. Wicker's claims in this action allegedly arise from his readmission to DOC's SRG program. *Id.* at 2.

Upon admission to NHCC, Mr. Wicker allegedly was immediately separated from other pretrial detainees, escorted to the medical unit while handcuffed, and then placed in the RHU. *Id.* at 2 (¶ 6). During his placement in the RHU, Mr. Wicker allegedly was stripped and placed into segregation without proper notice or investigation.

He allegedly was found guilty of gang affiliation at a hearing conducted by Lieutenant Dawson on June 27, 2024. *Id.* at ¶ 7. Lieutenant Dawson allegedly stated that Mr. Wicker's SRG status was being continued because his name had been found on a list from someone else's phone. *Id.* at 5 (¶ 11). The phone allegedly showed a name similar to Mr. Wicker's but did not have a picture of him. *Id.* at ¶ 12.

Mr. Wicker allegedly advised Lieutenant Dawson that he was not the individual listed on the phone. *Id.* The name on the phone's list was spelled "Bishop," while Mr. Wicker's name allegedly is spelled "Bishup." *Id.* at 6 (¶ 14). Mr. Wicker allegedly noted that the phone list did not show any actual gang activity, was not found in his property, and was older than six months. *Id.* at (¶ 13).

3

Lieutenant Dawson allegedly showed him pictures from his Facebook page, but none of the pictures allegedly showed gang activity or contained any gang slang. *Id.* at ¶ 14. Lieutenant Dawson allegedly explained that the social media posts were used to identify Mr. Wicker rather than affiliate him as an SRG inmate. *Id.* Mr. Wicker allegedly inquired about how he could be found guilty of SRG affiliation based on a name found on a phone list that was spelled differently from his name. *Id.* Lieutenant Dawson allegedly responded that the DOC Central Office sent him the information and found him guilty of SRG affiliation. *Id.*

Mr. Wicker claims that his SRG affiliation was predetermined and he had no chance to plead his case. *Id.* He complains that he was not afforded DOC's 90-day review or investigation process for SRG designation for an inmate who was previously discharged from DOC and later readmitted to DOC custody. *Id.*; *see also id.* at 4.

Mr. Wicker has attached to his Complaint his SRG designation appeal and District Administrator Washington's denial of that appeal. *Id.* at 11-13. In his denial, District Administrator Washington allegedly stated that the "Hearing Officer's finding was reasonable based on information and evidence presented at a formal hearing" and "[n]o due-process failure occurred" in Mr. Wicker's SRG designation hearing. *Id.* at 11-13.

After his SRG hearing, Mr. Wicker allegedly was moved to the SRG Unit at CRCC on June 28, 2028. *Id.* at 2 (¶ 7).

Mr. Wicker alleges that SRG inmates are afforded limited telephone and commissary privileges; do not have visits from anyone except immediate family; do not receive proper medical treatment; are subject to "strategic lockdowns" and "shakedowns"; and are exposed to inhumane cell and living conditions. *Id.* at 6-7 (¶ 17).  He claims that he is segregated in a hostile

environment. *Id.*

Mr. Wicker claims that he has only had two disciplinary reports during the last ten years: (1) a disciplinary report for his SRG affiliation in 2016; and (2) a disciplinary report for defending himself from attack by an active gang member in 2018. *Id.* at 7 (¶ 20).

## II.    STANDARD OF REVIEW

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only "'labels and conclusions,'" "'a formulaic recitation of the elements of a cause of action'" or "'naked assertion[s]' devoid of 'further factual

enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

## III.    DISCUSSION

Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

The Court will address the various claims and issues in turn.

### A.  The Personal Involvement Requirement

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). This is true with respect to supervisory officials, as well. *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (a plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability"). Thus, "[a] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

6

Mr. Wicker's Complaint alleges no facts to describe conduct by Correction Officer Zack or Wardens Dougherty and Brunelle. Nor do his attached documents indicate that these Defendants had any direct involvement in any violation of his constitutional rights. Because a plaintiff must plead that a defendant violated a constitutional amendment "by [their] own conduct," Mr. Wicker may not proceed on his constitutional claims for damages against Zack, Dougherty, and Brunelle. *See Tangreti*, 983 F.3d at 619; *Oh v. Quiros*, No. 3:24-CV-148 (SVN), 2024 WL 896605, at *3 (D. Conn. Mar. 1, 2024) (dismissing claims under section 1983 against Nurse Supervisor absent allegations about her conduct to violate his rights); *Smith v. Perez*, No. 3:19-CV-1758 (VAB), 2020 WL 2307643, at *5 (D. Conn. May 8, 2020) (dismissing all claims against defendants where complaint established no connection between defendants and alleged constitutional violations).

Accordingly, the claims against Correction Officer Zack, and Wardens Dougherty and Brunelle will be dismissed.

### B. The Claimed Violation of Plaintiff's Rights as a Pretrial Detainee

The Due Process Clause of the Fourteenth Amendment protects both a right to "substantive" due process and "procedural" due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998).[3] Substantive due process generally protects against the government's

---

[3] Because Mr. Wicker's Complaint alleges, and public information on the DOC website substantiates, that he was a pretrial detainee at the time of the incidents set forth in his Complaint, the Fourteenth Amendment substantive due process guarantee rather than the Eighth Amendment's prohibition against cruel and unusual punishment is applicable to his claims of deliberate indifference. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (holding that claims pertaining to the conditions of a pretrial detainees confinement in a state prison facility should be evaluated under the Fourteenth Amendment's Due Process Clause because "[a] [p]retrial detainee[ ] ha[s] not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise"). Accordingly, to the extent Plaintiff asserts claims asserted under the Eighth Amendment, such claims are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

"exercise of power without any reasonable justification in the service of a legitimate

governmental objective." *Id.* at 846.

A claim of violation of procedural due process must be analyzed by (1) asking whether

there exists a liberty or property interest of which a person has been deprived, and (2) if so,

whether the procedures followed by the State were constitutionally sufficient. *Swarthout v.*

*Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*) ("As for the Due Process Clause, standard

analysis under that provision proceeds in two steps: We first ask whether there exists a liberty or

property interest of which a person has been deprived, and if so we ask whether the procedures

followed by the State were constitutionally sufficient."). In the prison context, which involves

persons whose liberty interests have already been severely restricted because of their

confinement in a prison, a prisoner cannot show a cognizable deprivation of "liberty" unless he

can show that he was subject to an "atypical and significant hardship ... in relation to the ordinary

incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

But the liberty interest analysis under "*Sandin* does not apply to pretrial detainees."

*Benjamin v. Fraser*, 264 F.3d 175, 188, 190 (2d Cir. 2001) (citing *Wolff v. McDonnell*, 428 U.S.

539, 561-70 (1974) and *Hewitt v. Helms*, 459 U.S. 460 (1983) (qualified on other grounds by

*Sandin v. Conner*, 515 U.S. 474, 482-84)).

The level of procedural protection required depends on the purpose of the hearing.

*Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987) ("[T]he level of procedural protection differs

according to the purpose of the confinement."). For an administrative proceeding, the inmate is

entitled only to "some notice of the charges against him and an opportunity to present his views

[either orally or in writing] to the prison official charged with deciding" the matter. *Hewitt v.*

8

*Helms*, 459 U.S. 460, 476 (1983).[4] The proceeding that decides an inmate should be transferred to administrative segregation "must occur within a reasonable time following an inmate's transfer." *Walker v. Quiros*, 11-CV-00082 (MPS), 2014 WL 7404550, at *10 (D. Conn. Sept. 30, 2014) (citing *Hewitt*, 459 U.S. at 476 n. 8).

For a disciplinary proceeding, an inmate is entitled to advance written notice of the charge, adequate time to prepare a defense, a written statement of the reasons for the disciplinary action taken, and a limited opportunity to present witnesses and evidence in his defense. *Wolff v. McDonnell*, 418 U.S. 539, 561-70 (1974).

Both the *Wolff* and *Hewitt* standards require "some evidence" to support the decisions to place an inmate in administrative or punitive segregation. *Brown v. Semple*, No. 3:16CV376 (MPS), 2018 WL 4308564, at *12 (D. Conn. Sept. 10, 2018) (citing *Superintendent v. Hill*, 472 U.S. 445, 454 (1985) (procedural due process requires that decision in connection with prison disciplinary hearing be "supported by some evidence in the record")). The Second Circuit has explained that a disciplinary determination must be support by some "reliable evidence" of guilt. *Elder v. McCarthy*, 967 F.3d 113, 129 (2d Cir. 2020) (quoting *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004)).

### 1. RHU Placement on June 20, 2024

Mr. Wicker contends that he was placed in RHU on June 20, 2024, without "proper notice to such investigation," seven days before his SRG hearing. Doc. No.1 at 5 (¶ 10). These allegations suggest that Mr. Wicker was deprived of his procedural due process rights for his administrative

---

[4] In *Wilkinson v. Austin*, 545 U.S. 209, 229 (2005), the Supreme Court applied the standard set forth in *Hewitt* to a due process claim asserted by inmates who had been classified for indefinite placement in a high security state prison for safety and security, rather than disciplinary reasons.

segregation while his SRG affiliation determination was pending. *See Soto v. Walker*, 44 F.3d 169, 172 (2d Cir. 1995) ("The failure to provide informal review procedures within even as short a time as seven days in connection with a transfer into administrative confinement states a due process claim."). Although it is not entirely clear from the Complaint who acted to place him in the RHU without proper notice of the charges and an opportunity to present his views, for purposes of review, this claim may proceed against Captain Papoosha, who was the SRG Coordinator plausibly involved with decisions concerning Plaintiff's SRG affiliation.[5]

Accordingly, this claim will proceed to discovery and will not be dismissed at this time.

### 2. SRG Designation Hearing

Decisions from within this District have considered a pretrial detainee to have a liberty interest in being free from his restrictive conditions of the SRG Program, according to the procedural protections set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1973). *See Shelton v. Payne*, No. 3:21CV637 (KAD), 2021 WL 3190398, at *6 (concluding plaintiff's plausibly alleged that his SRG classification presented a disciplinary process which required compliance with *Wolff*); *Woolard v. Santiago*, No. 3:19cv1256 (VLB), 2020 WL 2079533, at *7 (D. Conn. Apr. 30, 2020) (finding the procedural protections set forth in *Wolff* applied when plaintiff was designated an SRG member). For purpose of initial review, all inferences shall be construed most favorably to Mr. Wicker in order to consider whether he was afforded the procedures required under *Wolff* before the determination of his SRG affiliation.

---

[5] As the alleged official coordinator for the SRG Program, Captain Papoosha was plausibly involved with Plaintiff's placement and confinement in the RHU and in the SRG Unit and is, therefore, an appropriate defendant for Plaintiff's Fourteenth Amendment claims at this initial stage. *See Pena v. Czeremcha*, No. 3:24-CV-938 (SVN), 2024 WL 4388277, at *5 (D. Conn. Oct. 2, 2024).

Mr. Wicker alleges that he was deemed guilty of SRG affiliation at his hearing based on erroneous evidence and that he had "no chance to plea[d] his case" as the Central Office had already predetermined his guilt of SRG affiliation. Doc. No.1 at 6 (¶ 14).  At this early stage, these allegations are sufficient to support an inference that he was deprived of a meaningful opportunity to heard at his hearing as required under *Wolff*. *See Edwards v. Arocho*, No. 22-585-PR, 2024 WL 5244996, at *9 (2d Cir. Dec. 30, 2024) (concluding pretrial detainee was deprived of opportunity to heard where correctional staff "brushed off" inmate's representations).[6]  In addition, these allegations suggest that his guilty determination was not supported by reliable evidence as required under *Elder*, 967 F.3d at 129.

Accordingly, Mr. Wicker's procedural due process claim against Lieutenant Dawson, District Administrator Washington, and Captain Papoosha, who plausibly all have involvement with the deprivation of Plaintiff's procedural due process rights in connection with his SRG designation in connection with his SRG designation, will proceed.

This claim, however, does not include any alleged failure of a Defendant to comply with a DOC administrative directive or prison process for readmitted SRG inmates. A prison official's failure to comply with prison regulations or policies does not constitute a basis for relief under Section 1983 because "violation of a prison regulation or policy does not establish that the official

---

[6] Mr. Wicker attaches an unsigned copy of a Security Risk Group Member Determination form, which states, *inter alia*:

> I/M Wicker discharged from DOC custody on 2/1/2019, while on SRG status (Bloods). Information gathered through facility intelligence and other confidential information confirm I/M Wicker['s] continued affiliation with the 52 Pueblos Bishop Bloods. A public social media account belonging to I/M Wicker was discovered under the name "Pueblo-Bishup," … With everything known, it is recommended that I/M Wicker remain on SRG status as he remains a threat to safety & security.

*Id.* at 15. It is not clear whether the Central Office provided and prepared this copy of the form for Lieutenant Dawson before Mr. Wicker's SRG designation hearing.

11

has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983." *Fine v. UConn Med.*, 18-cv-530 (JAM), 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019) (citation omitted); *see also Garcia v. Dep't of Corr.*, No. 3:22-CV-1328 (SVN), 2023 WL 8114212, at *9 (D. Conn. Nov. 22, 2023) (holding that plaintiff could not state a claim arising from prison officials' alleged violation of an "Administrative Directive or other policy").

      3.  <u>Punitive Conditions</u>

In the context of a pretrial detainee's claim against restrictive conditions of confinement, the Second Circuit has made clear that administrative segregation measures do not "violate substantive due process where prison officials subject[ ] pretrial detainees to such measures in response to specific evidence that those detainees posed a risk to institutional security, and where the measures were not excessive in relation to that purpose." *Almighty Supreme Born Allah v. Milling*, 876 F.3d 48, 56 (2d Cir. 2017). Put differently, "[a]lthough prison officials are to be afforded deference in matters of institutional security, such deference does not relieve officials from the requirements of due process or permit them to institute restrictive measures on pretrial detainees that are not reasonably related to legitimate governmental purposes." *Id.*

In *Almighty Supreme Born Allah*, the Second Circuit concluded that prison officials violated substantive due process when they placed a pretrial detainee in administrative segregation "solely on the basis of his prior assignment to (and failure to complete) the Administrative Segregation program during a prior term of incarceration" and when prison officials "adhered reflexively to a practice that did not allow for individualized consideration of [the plaintiff's] circumstances and that required him to be placed in Administrative Segregation regardless of his actual threat, if any, to institutional security." *Id.* at 57. "'[P]unishment can consist of actions taken

12

with an expressed intent to punish,' or of 'actions [that] are not rationally related to a legitimate nonpunitive governmental purpose or that ... appear excessive in relation to that purpose.'" *Edwards*, No. 22-585-PR, 2024 WL 5244996, at *9 (citing *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015) (quotation marks omitted)). Thus, even if a pretrial detainee has been properly subject to administrative segregation, substantive due process also applies to the conditions imposed on the detainee, which must be reasonably related to a legitimate government purpose, such as institutional security. *See Almighty Supreme Born Allah*, 876 F.3d at 55. The Second Circuit raised questions about whether certain conditions "were reasonably related to the ostensible goal of prison security," including solitary confinement for 23 hours per day; showering in leg irons and wet underwear; no programming or counseling therapy; and strict limits on visits, phone calls, and mail. *See id.* at 58.

Accepting as true, which this Court must do at this stage of the proceeding, *see Dehany v. Chagnon*, No. 3:17-cv-00308 (JAM), 2017 WL 2661624, at *3 (D. Conn. June 20, 2017) (for the purposes of review under Section 1915A(a), "[t]he Court must accept as true all factual matters alleged in a complaint"), Mr. Wicker's allegations that his SRG designation was predetermined, he as sufficiently alleged that he was reflexively designated to the SRG program for punitive rather than legitimate penological reasons. Doc. No. 1 at 6 (¶ 15). Mr. Wicker also alleges facts sufficient to support a plausible claim that, at least, some of the restrictions imposed on him as an SRG inmate were punitive rather than related to legitimate penological concerns. It is plausible that legitimate security interests to prevent SRG activity are furthered by "lockdowns" and "shake downs," segregated confinement, and some restrictions on telephone privileges or the alleged limitation on visits to only immediate family members. It is less clear, however, how any strict

restrictions on telephone calls,[7] limitations on commissary spending, or the alleged provision of unsanitary conditions and inadequate medical treatment advance prison safety and security interests. *See Vanterpool v. Harris*, No. 3:20-CV-140 (JAM), 2020 WL 13017257, at *5 (D. Conn. Sept. 4, 2020) (noting "it is not evident how conditions like limiting telephone calls and commissary spending, wearing a particular color, limiting access to programming, forcing inmates to eat in unsanitary conditions, and limiting visits from family enhance prison safety or security").

Accordingly, Mr. Wicker's substantive due process claims for damages against Captain Papoosha—who plausibly was involved with Plaintiff's punitive SRG conditions—in his individual capacity may proceed. *See Vanterpool*, 2020 WL 13017257, at *7 (permitting Fourteenth Amendment substantive due process punitive conditions claim to proceed against Papoosha in his individual capacity).

### C.  The Deliberate Indifference Claim

Pretrial detainees also have a Fourteenth Amendment right against treatment that is the result of deliberate indifference by prison officials to their safety. *See Darnell*, 849 F.3d at 29 (discussing general conditions of confinement requirements to provide food, clothing, and shelter for pretrial detainees under the Fourteenth Amendment).

Such a claim requires first establishing a risk of harm that is objectively serious, and then establishing the defendant's deliberate indifference to that harm. *See Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) ("A deliberate indifference claim contains two requirements. The first requirement is objective: 'the alleged deprivation of adequate medical care must be sufficiently serious. The second requirement is subjective: the charged officials

---

[7] Plaintiff has not described the extent of the telephone restriction. The Court construes his complaint most liberally to allege that the SRG inmates were afforded only very strict telephone privileges.

must be subjectively reckless in their denial of medical care.'" (quotations and citations omitted)). A Plaintiff must show that the challenged "conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health, which includes the risk of serious damage to physical and mental soundness." *Darnell*, 849 F.3d at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013)) (internal quotation marks omitted). "[T]he conditions themselves must be evaluated in light of contemporary standards of decency." *Id.* (citation and internal quotation marks omitted). This inquiry focuses on the "severity and duration" of the conditions, "not the detainee's resulting injury." *Id.* (citing *Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015)). Conditions are also considered in combination where one combines with another to affect at least one identifiable human need. *See Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *see also Darnell*, 849 F.3d at 32 ("the conditions must be analyzed in combination, not in isolation, at least where one alleged deprivation has bearing on another").

In addition, "the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. "A detainee must prove that an official acted intentionally or recklessly, and not merely negligently." *Id.* at 36.

Mr. Wicker complains that SRG inmates are subject to restrictions on their telephone, commissary, and visiting privileges, and are exposed to "lockdowns" and "shakedowns." These allegations do not suggest Mr. Wicker's deprivation of any basic human need or exposure to a serious risk of harm to his health or safety. *See Vanterpool*, 2020 WL 13017257, at *5

15

(concluding that plaintiff had not alleged deprivation of basic human need or exposure to a serious risk of harm based on alleged conditions including three telephone calls per day, commissary spending limited to $35.00, having to wear a white jumpsuit, failure to allow outdoor recreation or access to programing, recreation in the gym to one day per week, not permitting social contact through the cell doors, forcing inmates to eat meals near the toilet, not allowing congregate religious services, not allowing inmates to earn good time credit, preventing release to a halfway house or parole, and limiting visitation to only family members); *Doyle v. Santiago*, 19-cv-901 (MPS), 2019 WL 5298147, at *8 (D. Conn. Oct. 18, 2019) (noting that "[a]lthough the conditions described [in phases 2 and 3 of the SRG program] may be harsh, they do not deprive the plaintiff of any basic human need and, therefore, are not unconstitutional").

Mr. Wicker also alleges that SRG inmates were provided with inadequate medical treatment and subjected to "inhumane cells and living conditions" and that he is "segregated in a hostile environment." Doc. No. 1 at 6-7 (¶ 17). But he has not alleged specific facts to show that he suffered from any objectively serious physical or mental health condition but was not provided with adequate medical attention or that his specific cell and living conditions exposed him to a serious risk of harm. He cannot base a claim of deliberate indifference on conclusory allegations. *Pena v. Czeremcha*, No. 3:24-CV-938 (SVN), 2024 WL 4388277, at *6 (D. Conn. Oct. 2, 2024) (citing *Iqbal*, 556 U.S. at 678); *see Darnell*, 849 F.3d at 30 (unconstitutional unsanitary conditions of confinement must be assessed according to severity and duration); *see also Orellano v. Papoosha*, No. 3:20-CV-00480 (VLB), 2021 WL 2109132, at *8 (D. Conn. May 25, 2021) (dismissing claim where plaintiff failed to allege facts about his medical or

mental health condition to satisfy the objective element of a Fourteenth Amendment deliberate indifference claim).

Accordingly, Mr. Wicker's claims of Fourteenth Amendment deliberate indifference will be dismissed as not plausible.

### D.  The Fourteenth Amendment Equal Protection Violation Claims

To state an equal protection claim, a plaintiff must allege facts showing that: (1) he or she was treated differently from similarly situated individuals and (2) that the discriminatory or different treatment was based on "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). A plaintiff must demonstrate evidence of "purposeful discrimination ... directed at an identifiable or suspect class." *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (citations omitted). Thus, to prevail on an equal protection claim, a plaintiff must allege that (1) compared with others similarly situated he or she was treated differently; and (2) that such different treatment was based on impermissible considerations such as race, national origin, religion or some other protected right. *See Colantuono v. Hockeborn*, 801 F. Supp. 2d 110, 118 (W.D.N.Y. 2011) (citation omitted).

When a suspect classification is not at issue, the Equal Protection Clause still requires that individuals are treated the same as "similarly situated individuals." *Fortress Bible Church v. Feiner,* 694 F.3d 208, 222 (2d Cir. 2012). Thus, a plaintiff may bring a "class of one" equal protection claim "where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."

17

*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). In the Second Circuit, a class-of-one plaintiff "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Clubside v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (citation omitted). The similarity between the plaintiff and comparators provides "an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate governmental policy that an improper purpose—whether personal or otherwise—is all but certain." *See Witt v. Village of Mamaroneck*, No. 12-CV-8778 (ER), 2015 WL 1427206, at *5 (S.D.N.Y. Mar. 27, 2015), *aff'd*, 639 F. App'x 44 (2d Cir. 2016) (quoting *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005)).

"Neither sentenced inmates, nor pretrial detainees are members of a protected or suspect class." *Gonzalez v. Hannah*, No. 3:19CV1522(VLB), 2020 WL 3256869, at *8 (D. Conn. June 16, 2020). Mr. Wicker not alleged facts to suggest that he was subject to disparate treatment from comparators due to any "'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel*, 232 F.3d at 103.

At best, Mr. Wicker's allegations can be construed to assert an equal protection claim under a "class of one" theory because he is being treated differently than other former SRG affiliated inmates who have re-entered DOC custody and are provided with the 90-day review before their SRG designation, and thus he was discriminated against as a "class of one" based on intentional disparate treatment without a rational basis for the difference in treatment. *Village of Willowbrook*, 528 U.S. at 564. But this conclusory allegation, without more to substantiate it, is not sufficient to survive a motion to dismiss. *Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the

18

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (alteration in original) (citations omitted)); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Accordingly, Mr. Wicker's Fourteenth Amendment equal protection claims will be dismissed as implausible.

### E.  Official Capacity Claims

Official capacity claims for monetary damages against state employees are barred by the Eleventh Amendment. *See e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("[A]bsent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court."). As a result, to the extent that Mr. Wicker seeks damages against any of the Defendants in their official capacities, those claims must be dismissed.

A claim for injunctive or declaratory relief may proceed against a defendant in his or her official capacity, only to the extent that an ongoing constitutional violation is alleged. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)) ("This doctrine has existed alongside our sovereign-immunity jurisprudence for more than a century **. . .** when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes. . . . [t]he doctrine is limited to that precise situation[.]"). Further, a claim for injunctive relief can only proceed against defendants who "plausibly have the authority to grant the prospective relief." *See Scozzari v. Santiago*, 2019 WL 1921858, at *6 (D. Conn. Apr. 29, 2019).

Mr. Wicker's claims of Fourteenth Amendment violations arising from his allegedly unconstitutional SRG designation and confinement in the SRG Unit, and his request for return to the general population suggest that he remains subject to Fourteenth Amendment violation while housed in the SRG Unit. Accordingly, Mr. Wicker may proceed against Captain Papoosha and District Administrator Washington in their official capacities, but any claims for damages against any of the Defendants in their official capacities will be dismissed.

## ORDERS

**Based on the foregoing, the Court issues the following orders:**

(1) Mr. Wicker may proceed on the following individual capacity claims for damages in this action: (1) a Fourteenth Amendment procedural due process claim against Lieutenant Dawson, District Administrator Washington, and Captain Papoosha; (2) a substantive due process claim arising from the alleged punitive placement and conditions in the SRG Unit against Captain Papoosha; and (3) Fourteenth Amendment Due Process and Equal Protection Clauses claims against Captain Papoosha and District Administrator Washington in their official capacities.

All claims against Correction Officer Zack or Wardens Dougherty and Brunelle are **DISMISSED**.

The Fourteenth Amendment equal protection claim against Captain Papoosha in his individual capacity is **DISMISSED**.

If Mr. Wicker can allege facts to cure the deficiencies identified in this Ruling and Order, he may file a motion to amend and attach an Amended Complaint by **April 18, 2025**. An Amended Complaint, if filed, will completely replace the Complaint, and the Court will not consider any allegations made in the original Complaint in evaluating any Amended Complaint.

(2) The Clerk of Court shall verify the current work addresses for Lieutenant Dawson, District Administrator Washington, and Captain Papoosha with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint to them at their confirmed addresses by **March 28, 2025**, and report on the status of the waiver request by **April 11, 2025**. If any Defendant fails to return the waiver request, the Clerk of Court shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that Defendant, and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk of Court is instructed to prepare a summons form and send an official capacity service packet to the U.S. Marshal Service.  The U.S. Marshal Service is directed to effect service of the Complaint and this Order on Captain Papoosha and District Administrator Washington in their official capacities at the Office of the Attorney General, 165 Capitol Avenue, Hartford, CT 06106, by **March 28, 2025** and to file a return of service by **April 11, 2025**.

 (4) The Clerk of Court shall send a courtesy copy of the Complaint and this Order to the DOC Office of Legal Affairs.

(5) The Defendants shall file their response to the Complaint, either an Answer or motion to dismiss, by **June 20, 2025**. If the Defendants choose to file an Answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. The Defendants may also include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed by **October 24, 2025**. Discovery requests need not be filed with the Court.

(7) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(8) All motions for summary judgment shall be filed by **December 5, 2025**.

(9) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(10) If Mr. Wicker changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Mr. Wicker must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Wicker has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the Defendants or their counsel of his new address.

(11) Mr. Wicker Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. He is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendants' counsel by regular mail.

**SO ORDERED** at New Haven, Connecticut, this 7th day of March, 2025.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

22